# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE

## MICHAEL LYNN STANTON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 85591     Mary Beth Leibowitz, Judge**

_____

**No. E2009-02198-CCA-R3-PC - Filed September 16, 2010**

_____

The petitioner, Michael Lynn Stanton, filed in the Knox County Criminal Court a petition for post-conviction relief, alleging that his trial counsel was ineffective. The post-conviction court denied the petition, and the petitioner appeals. The State filed a motion requesting that this court affirm the denial pursuant to Rule 20, Rules of the Court of Criminal Appeals. After review, we conclude that the petition was properly denied. Accordingly, the State's motion is granted, and the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed Pursuant to Rule 20, Rules of the Court of Criminal Appeals.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., AND D. KELLY THOMAS, JR., JJ., joined.

Albert J. Newman, Jr., Knoxville, Tennessee, for the appellant, Michael Lynn Stanton.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; Randall E. Nichols, District Attorney General, and Phil Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Petitioner was convicted by a jury in the Knox County Criminal Court of first degree murder, attempted first degree murder, and two counts of aggravated burglary. He received an effective sentence of life without parole plus seventy-five years. The Petitioner's convictions stem from an incident on the night of April 3, 1999, when he went to the house of his then-estranged wife, Tiffany Wensell. The Petitioner demanded entry and, upon being refused, fired a gun into the house several times. One of the Petitioner's shots struck Wensell

in the upper right shoulder. Wensell's friend, Jody Reynolds,[1] was also at Wensell's house. Reynolds retrieved a gun from Wensell's bedroom and shot the Petitioner when he entered the house. The Petitioner fell to the floor in the kitchen. When Wensell's stepfather, Larry Sharp, arrived to help, the Petitioner shot him in the head. Police arrived, and Reynolds went outside to tell them what was happening. While outside, Reynolds heard two more gunshots. The medical examiner who performed Sharp's autopsy confirmed that Sharp had been shot three times: once in the head above the right ear, once in the back of the neck, and once in the right side of the back. See State v. Michael Lynn Stanton, No. E2003-02675-CCA-R3-CD, 2005 WL 876873, at **1-4 (Tenn. Crim. App. at Knoxville, Apr. 15, 2005). On direct appeal, this court affirmed the Petitioner's convictions for the first degree murder of Sharp, the attempted first degree murder of Wensell, and one count of aggravated burglary; however, this court reversed and dismissed one conviction of aggravated burglary upon concluding that the conviction violated double jeopardy. Id. at *19.

Subsequently, the Petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective for advising the Petitioner that he should not testify at trial and for failing to vigorously cross-examine Wensell and Reynolds. At the post-conviction hearing, the Petitioner testified that he attended school through the eleventh grade and that he had no difficulty reading or writing. He said he understood that he had faced the death penalty and that if he were granted post-conviction relief he could again face the death penalty.

The Petitioner stated that after the crime was committed in 1999, he was in custody until the time of trial in 2003. He said he met with counsel approximately twenty times with each meeting lasting about an hour.[2] He said he and counsel had a good relationship, and he was largely satisfied with counsel's representation. He stated that he told counsel his version of events, maintaining that he went to Wensell's house to check on his children and that he shot his gun in self-defense after he saw Reynolds with a gun. He said that when he shot Wensell and Sharp, he believed he was shooting at Reynolds. He acknowledged that prior to going to Wensell's house uninvited, he "borrowed" the gun and bullets from his father without his father's permission. He said that he anticipated trouble at Wensell's residence.

The Petitioner said he wanted to testify at trial, but counsel advised him against it. Counsel was concerned about the Petitioner's history of criminal convictions, many of which were connected to the assault or rape of Wensell. Counsel told the Petitioner that if he chose

[1] In the record, this individual is also referred to as "Joshua Reynolds."

[2] The Petitioner testified that he was represented by multiple attorneys; however, only lead counsel testified at the post-conviction hearing.

to testify the State would be allowed to present more detailed evidence regarding the prior convictions. Therefore, counsel told the Petitioner that his testimony could hurt his case. Counsel advised the Petitioner that one of Reynolds' pretrial statements would adequately inform the jury of the basis of the Petitioner's self-defense claim. The Petitioner acknowledged that the decision to not testify was ultimately his decision. However, he maintained that he decided to not testify based upon counsel's advice.

The Petitioner's lead trial counsel testified that he met with the Petitioner approximately sixty times with each meeting lasting about an hour. From the inception of the case, the Petitioner wanted to pursue a defense of self-defense. Counsel was concerned that if Petitioner testified, the jury would notice the Petitioner's anger toward Reynolds and Wensell, which could damage the defense theory that there was no premeditation.

Counsel believed self-defense could be presented to the jury through one of Reynolds' pretrial statements. The statement indicated that after Reynolds first shot the Petitioner, he went back to the kitchen to "finish [the Petitioner] off." Counsel noted that the Petitioner was severely injured by the shot and opined that his injuries bolstered the claim of self-defense. Counsel stated that at trial Reynolds "backtracked" from his statement, but the trial court had granted counsel's request to admit Reynolds' pretrial statement as substantive evidence. Additionally, counsel thoroughly cross-examined Reynolds regarding the changes in his version of the events.

Counsel said his advice to Petitioner was based, in part, on his concern that Petitioner would be questioned about his history of criminal offenses against Wensell. Counsel acknowledged that the Petitioner's criminal history came out at trial. However, he explained:

> My fear was that [the Petitioner] would have to get up and explain, "Okay. Here's what happened in the first incident, the aggravated assault and the spousal rape. Here's what happened in the second incident, the aggravated assault." I felt that that would hurt him and hurt our case when he would have to sit on the stand and say, "Yes, I did this; yes, I did that; yes, I did the other."
>
> So, yes, I knew it was in; I just didn't want [the Petitioner] to have to be the one who was explaining. And he had pled guilty to that. So it wasn't something he was going to be able to say it didn't happen.

At the conclusion of the hearing, the post-conviction court found that "although [the Petitioner] complains that counsel should have advised him to testify, counsel's advice was just that, advice." The court found that the Petitioner made the decision not to testify at trial. Additionally, the court found that counsel thoroughly cross-examined Wensell and Reynolds about their prior statements. Accordingly, the post-conviction court found that counsel was not ineffective and denied the petition. On appeal, the Petitioner challenges the post-conviction court's ruling.

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the
> test, a failure to prove either deficiency or prejudice provides a

-4-

sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

In the instant case, the Petitioner argues that counsel was ineffective for advising him to not testify at trial and for failing to more vigorously cross-examine Wensell and Reynolds. However, the Petitioner acknowledged that he, not counsel, ultimately made the decision that he would not testify at trial. Additionally, counsel stated that having the Petitioner not testify at trial was a matter of trial strategy. On appeal, this court may not second-guess the tactical or strategic choices of counsel unless those choices are based upon inadequate preparation, nor may we measure counsels' behavior by "20-20 hindsight." See State v. Hellard, 629 S.W.2d 4, 9 (Tenn. 1982). Moreover, "[a]llegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." Taylor v. State, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991). Therefore, the Petitioner is not entitled to relief on this basis.

Although the Petitioner contends that counsel failed to vigorously cross-examine Wensell and Reynolds, he has failed to show that additional information could have been discerned by further cross-examination. In fact, the Petitioner stated that, as a whole, he was satisfied with counsel's representation. The post-conviction court found that counsel thoroughly cross-examined Wensell and Reynolds, and the record does not preponderate against this ruling.

Accordingly, we conclude that the trial court did not err in denying the Petitioner's petition for post-conviction relief. Thus, the State's motion is granted. The judgment of the post-conviction court is affirmed pursuant to Rule 20, Rules of the Court of Criminal Appeals.

_____
NORMA McGEE OGLE, JUDGE

-5-